Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Catherine Zienoff presiding, along with Justice Ann Jorgensen and Justice Mary Shostak. The case is number 2180324, People of the State of Illinois, Plaintiff Appellee v. Ali Borders, Defendant Appellant. Arguing for the Appellant, Anthony J. Santella. Arguing for the Appellee, Katrina Kuhn. Thank you, Mr. Kaplan. This is Justice Zienoff speaking. We would like to thank you, Counsel, for being available to proceed with your oral arguments this morning on a remote basis. Before we begin, a word or two about our format. Just as if you were in the courthouse in Elgin, you will each have up to 15 minutes for your arguments. The Appellant will also have up to five minutes for rebuttal. As you've heard, Mr. Kaplan has a buzzer, which will indicate the end of your time. You do not have to use all of the time allotted, of course. And I certainly will remind you that, as is our practice in the 2nd Appellate District, we have all read your briefs ahead of time. What will be different this morning is that we will not interrupt your argument with our questions as we usually do. We felt that since this was being done remotely, it would be too difficult to proceed in that manner. So we will save our questions for each of you until you have completed your arguments. That is, after the Appellant argues, we will all ask you questions. After the Appellee argues, the same. I would like to remind you that no one except the Clerk is permitted to record this proceeding today. Do either of you have any questions regarding our procedure? No, Your Honor. Okay. All right. At this time then, Mr. Santella, would you like to begin your argument? Yes, Your Honor. Good morning, and may it please the Court. My name is Anthony J. Santella, and I represent Ali Borders in this case. This case boils down to whether Ali knew that he resisted the performance of two Freeport police officers by undertaking the actions described in the charges. Section 31-1A, the statute prohibiting resisting or obstructing peace officers, does not prohibit innocent or inadvertent conduct. When the officers invited Ali to talk on the front step and gave him no indication they needed to enter his house to continue the investigation, and Ali cooperated with the officers, he did not act with knowledge by reacting when the officers grabbed him and attempted to put him in handcuffs without giving him warning. And I will note before I continue that the charges describe actions that happened in quick succession and overlap. So, for clarity, when I refer to the Laurent charge, that's the allegation that Ali resisted the performance of Corporal Laurent by pulling away, disobeying a command. The command was to stay outside and refusing to be handcuffed. And when I refer to the Heath charge, that's the allegation that Ali resisted Officer Heath's performance by stiffening his arms to prevent arrest. I want to start with the argument that Laurent did not take an authorized act in throwing Ali to the ground to put him in handcuffs. The issue here is not whether exigent circumstances existed so that Laurent could enter the house. And I'm not arguing whether Laurent could permissibly enter the house or not. He was lawfully investigating a 911 call. But when Laurent invited Ali to talk on the front step by saying, I'm not saying I'm going to go inside or anything, and then allowing Ali to go inside to get a shirt while Laurent waited outside behind a locked door. It was not permissible for Laurent to impute Ali's reaction as resisting a peace officer when Laurent grabbed Ali and prevented him from going inside to get his shoes. Especially because he didn't tell Ali why he changed his mind. Nothing about Laurent's behavior prior to grabbing Ali to prevent him from going to get his shoes would have indicated to Ali that he was doing anything wrong or was being detained. And based on Laurent's trial testimony, he was not trying to detain Ali until Ali went to get his shoes. Not earlier when Ali went to get his shirt. So when Laurent took Ali's innocent action of going inside for more clothes as a reason to detain him, Laurent was not authorized to then throw Ali to the ground to put him in handcuffs. If Ali was detained at the beginning of their encounter, Laurent should have tried to stop Ali from going inside the first time to get his shirt or at least said something to stop him or told him that he didn't want him going back inside again. But even if Laurent was lawfully investigating a 911 call, it can't be the case that he acts one way and then changes his mind to act another way without telling anyone why and then takes Ali's reaction of pulling away from being grabbed as a reason to throw him to the ground to put him in handcuffs. That was not authorized and Ali's reaction was not resistance violating the statute. I'd like to turn now to the argument that Ali did not act with knowledge when he pulled away from Laurent and disobeyed his command to stay outside. Knowledge is proven by circumstantial or can be proven by circumstantial evidence, but any inference of knowledge must be based on established facts and not intervening inferences. Here, there's no established fact that allows for an inference that Ali went inside to obstruct the police investigation. He asked multiple times as heard on the body cam footage, including before and after Laurent grabbed him and Ali pulled away that he wanted to get his socks and shoes. That's established. No one told Ali they were trying to get into the house. Laurent told Ali, it's not like I'm going to go inside or anything. That's established. And Laurent stood right next to Ali's sister, Alicia, and watched her go back inside the house without trying to stop her. It's reasonable to infer that when Ali saw his sister allowed back inside without any officer trying to stop her, he took that to mean the officers didn't need to enter the house to conclude their investigation. The only reasonable inference supported by the facts is that Ali was trying to go inside to get his shoes and his socks so that he could continue talking with the officers. It was February. It was 5 a.m. The officers commented it was cold. Ali went to get a shirt and came back with no problem. There's no reason to think Ali would have done anything differently if Laurent didn't grab him the second time to try and stop him from getting his shoes. From what Ali knew, he had no reason to suspect Laurent would prevent him from going inside at all. His reaction when Laurent grabbed him was innocent and inadvertent. And it was natural. He had no reason to think he was doing anything wrong, so he pulled away. He went inside earlier, so he thought it was fine to go inside now. This isn't proscribed by the statute, and this court should reverse Ali's conviction of resisting Laurent's performance on that basis. And to turn to the Heath charge that Ali resisted Heath's performance by stiffening his arms to prevent arrest. If Ali acted with knowledge in stiffening his arms, he would have to be consciously aware that Heath was trying to arrest him. And that isn't the case here. Heath admitted he never told Ali he was under arrest. He said, we're done playing games. It is true that Heath told Ali to put his hands behind his back, but it's not the case that every time an officer says that, a person will know he's being arrested. And here the context matters. At trial, Ali said that regarding Heath, that Heath ran up to him while Ali was talking to Laurent and shouted something Ali didn't hear. And when you watch the body cam footage, it's clear that Heath was not involved in the conversation between Ali and Laurent. Heath was off to the side of the house for the entirety of the conversation until he decided to run up and grab Ali. And even after Ali was in handcuffs and Heath finally tells Ali that he has been arrested, Ali says, I wasn't the one being arrested and shows no understanding of what Heath had been trying to do. This does not show conscious awareness. Ali was not talking with Heath. He was talking to Laurent. So when Heath came up and grabbed him, it was innocent conduct for Ali to stiffen his arms. And innocent conduct does not violate the statute. To briefly conclude before any questions, the evidence here shows Ali's actions were innocent and taken in response to what the officers had communicated to him throughout the interaction. A police officer should not be permitted to stay and act one way throughout an interaction, change his or her mind without telling a person and impute that person's reasonable reaction to resisting a peace officer if that person has been cooperating throughout the interaction. This court should therefore reverse both of Ali's convictions outright. And if your honors want to ask any questions, that concludes my argument. Thank you. Justice Jorgensen.  Justice Jorgensen. Sorry. Sorry. That's okay. You're on mute. Mute. A little technical difficulties here this morning. Okay. With respect to Corporal Laurence, do you think he was acting or executing an authorized act at the time of your client's arrest? I don't think he was executing an authorized act at the time of Ali's arrest. No. I think that he was permitted to investigate the 911 call. I think that it was permitted that he could even go inside of the house. But the problem here is that he never communicated that intention to Ali and Ali was cooperating with him. And so when he didn't decide that Ali could no longer go back inside the house, after an entire interaction where Ali was cooperating and didn't understand what Laurent needed to do, it wasn't authorized for him to then force Ali to the ground to put him in handcuffs. Go ahead. Go ahead. I'm done. All right. I was going to ask Justice Shostak, do you have questions? Yes. I have a few questions. The plaintiff in their brief cited cases stating that knowledge of arrests can be proven by circumstantial evidence. In this case, you have not talking about Laurent, but talking about Heath. He said, we're done playing games. You indicated he said something about putting his hands behind his back. Isn't that circumstantial evidence to know that you're under arrest? I don't believe it is in all context, Your Honor, and I don't think that was the case here. I believe that when Heath, regarding Heath's actions, the established fact is that he was off to the side and not involved in the discussion between Ali and Laurent. And Ali was not really aware what Heath was doing, and he was not aware what Heath was doing when Heath ran up to him and said to put his hands behind his back. And Ali had no reason to believe that he had done anything wrong or that he would be put in handcuffs. And so I think based on the conduct or based on the context, excuse me, the circumstantial evidence doesn't show he would know that he was being arrested based on that statement because he had done nothing wrong. And the officers agree that they had no reason to suspect him of a crime. He wasn't charged with anything additionally. So, no, I don't think in this context that the circumstantial evidence shows that he that Ali knew he was being put under arrest. Okay. Was there any reasonable articulable suspicion that your client had committed any crime at that point? No, Your Honor. There was none. And I would point out that when Ali first came and opened the door and said that I need to go get a shirt, Laurent didn't stop him at that point from going inside to get a shirt, even though Alicia Hall, who they knew had called 911, was back inside the house and the officers were all locked outside waiting for Ali to come back. They didn't show any urgency of trying to get inside the house. They didn't show any concern that Ali was potentially going to go commit a crime. And they didn't seem particularly worried that he was going to come back. It wasn't until the second time when Ali went inside to get his shoes and socks that the officers said, no, you have to stay outside now. And he also testified that he had no reason, no suspicion of Ali when he arrived. So there was there was no articulable suspicion here that Ali had committed a crime. The officers were just trying to talk with him about why his sister called 911. OK, now, is the officer intention to arrest their case cases specifically to how it tastes? It says that that has to be communicated to the defendant. Now, the test that is to determine whether or not the defendant thought that he was under arrest. Is that a subjective or objective test? And do you know? Your Honor, I don't have that case in front of me, I would say in this instance, it was subjective that Ali did not know he was under arrest. And the officers themselves showed showed they did not know when Ali was placed under arrest. And I don't think that you could pinpoint on the video where anyone decided Ali was under arrest. And so I think. I didn't hear what you had to say. At what point did they tell him he was under arrest? They didn't tell him he was under arrest until he was being taken to the squad car in the after he was in handcuffs. And in this context, it's very unclear where they decided he was at first detained. And then when that turned into an arrest, he said that he wanted to arrest Ali. But he was but he also said he was doing that on Lawrence orders and he was following Lawrence lead, despite the fact Lawrence said he was just trying to detain Ali. And so it's really unclear where he decided he was going to arrest Ali and why he wasn't trying to detain him if he was following Lawrence orders. And then when Ali was in handcuffs, it was a third officer who not neither he nor Lawrence who told the dispatcher that they had placed Ali under arrest. That was the first time anyone said it. And so after that, when he told Ali he was under arrest, Ali had no idea. He said, I wasn't the one being arrested. He did not understand that he had been arrested or why this this is not a this is a case where the officers were not communicating with each other about what they were trying to do. This is a case where they seem to arrest Ali by accident and they couldn't really go back from that. Do you think this is a these cases are these separate counts, counts one and two. Do you think these are an all or nothing reversal or can one be reversed and one affirmed? I think that I think that in both instances, in both with respect to both charges, Ali did not have knowledge for either one that his conduct was resisting the performance of either officer. And so I think in that regard, it that both charges should be reversed outright, because, as I said at the beginning of my argument, these actions happened in very quick succession and they somewhat overlap. At no point during them did Ali have knowledge that he was resisting either officer's performance because the actual charges describe a very brief time period where Ali had no idea what was happening. Thank you very much. I have no further questions. I just have two. You would agree, would you not that certainly resisting even on lawful arrest is a violation of the statute. Isn't that correct? Well, Your Honor, there is case law that says that in Illinois, you're not permitted to resist an unlawful arrest. However, this case is not a case where it's merely just an officer not communicating that he is going to arrest a defendant. In this case, as I've said, the officers were not aware or communicating with each other that they were going to either arrest or detain Ali. And then they see his reaction of him pulling away when Laurent grabbed him and say, well, now he's resisting. But that was an innocent action. That was inadvertent. I would say that's a natural reaction to somebody grabbing you when you don't expect it. And so I think the issue here is not just whether or not he was told under arrest. He said he didn't know. And he didn't know because no one told him he was under arrest or that he was doing anything wrong. Right. But these were police officers. This is not some, you know, somebody not in uniform grabbing him. I mean, he was in the presence of police officers. And you're saying even though he was grabbed by a police officer, that a natural reaction would be to stiffen one's arms as opposed to submitting to the authority of the police? Yes. But I would say it depends on the context. And here, Ali was cooperating with the officers. He was continuing on a conversation. He was answering their questions to the best of his ability. And I would keep in mind, he had just woken up. He was 20 years old. And based on the circumstances, I would say he had done everything correctly at that point. But when he had been, after the officer's interactions with him, he believed that he was allowed to go get his shoes and socks. Even when an officer is the person that grabs you, I think that's a natural reaction because he didn't have any reason to believe that he had anything to worry about from these officers or that he had done anything wrong. And there was no accusation that he had committed a crime. Right. But there had been another 911 call during the middle of the night. And the police were aware of that and were aware of an argument that had taken place between Ali and Hall, his sister, correct? Your Honor, actually, I want to point out that that call, which Keith had responded to, first, I don't think it's clear from the record what time that call was. I don't recall on the record that it was at midnight. I believe it might have been the day before. I'm sorry. I said the middle of the night. I didn't put a time on it. But sometime within the past 12 hours, let's say, prior to their arrival at five something in the morning. Within a very recent period of time, the police had been aware there had been a 911 call with an incident at that same residence between these two, the brother and the sister. Officer Heath did respond to a call that Ali Shahal had placed. However, Heath also said that when he came to the house in response to the call at issue in this case, he had no reason to suspect that Ali had anything to do with this or that he had committed a crime or that there was some sort of ongoing dispute. He actually indicated frustration that Ali Shahal seemed to just continually call 911. He referred to her as a 1096 and said that she might have had mental instability. He repeatedly asked Ali why his sister kept calling 911. But at the trial level, no one focused on this earlier call as being a potential reason why they would suspect Ali of committing a crime. And that wasn't a focus and it shouldn't be a focus here. Those calls appear to be unrelated and there don't appear to be anything. There doesn't appear to have been anything from that call that affected the officer's behavior in this instance. And so I don't think that there's anything that can be relied on to say that Ali should have known the officers would suspect him of anything from the earlier call. Okay. Thank you. Justice Jorgensen or Shastak, do you have any further questions of Mr. Santella? No, nothing further. Okay. Thank you. No further questions. Okay. Thank you, Mr. Santella. Ms. Coon? Good morning, Your Honors. Can you hear me? Good morning. Yes. Great. May it please the court and good morning, counsel. May it please the court. My name is Katrina Coon and I'm arguing for the state on this appeal. The state is asking this court to affirm defendant's convictions, both for obstructing and resisting Corporal Laurent and Officer Heath. Defendant refused to comply with Laurent's order to remain outside and he pulled away from Laurent when Laurent tried to keep defendant from going back inside during the investigation of the 911 call. Once the defendant was told to put his hands behind his back, defendant stiffened his arms and fought multiple officers who were trying to handcuff him. As the state, as the court has noted, you know, the court is aware of the facts. These cases are very fact-specific. This was a 911 hang-up call. Therefore, the officers did not know the reason for the call. They did not know whether the caller was male or female. They did not know if perhaps it was a misdial or nothing, you know, there was no emergency happening. However, a lot of things happened between the time Officer Heath arrived at the residence, which was approximately 5.17 in the morning, and the time that defendant was arrested. There was a whole litany of facts that support defendant's arrest. You know, when Officer Heath arrived, you know, he didn't know, my opposing counsel argues that Officer Heath didn't suspect defendant of anything. Well, a lot of things happened in the ensuing time, including Hall coming to the door and responding to the knock. And then she said someone was climbing out the window and no one came out of the house and arguing was heard inside of the residence. Officer Heath was then told by another officer that Hall would not let the officers inside. Hall then comes out of the house and is walking around outside the house. And Heath is trying to communicate with Hall and find out what the emergency is. Hall is very distraught. She's on the phone. She's refusing to speak to the officer. And then she says in a very strained and agitated voice that the problem has been removed and that she was done. And then she goes back inside. And then Hall calls 911 again and asks that the officers leave. And then Hall shouts to defendant that he should come inside and shut the door and stop answering the officer's questions. And that is the point when Corporal Laurent was telling defendant to remain outside. So we have all those surrounding facts and circumstances. Now, as to Officer Laurent, defendant was charged with refusing to comply with commands, pulling away, and refusing to be handcuffed. Those charges were in the disjunctive, meaning if evidence was presented as to any one of those acts, defendant's conviction could be affirmed as to Corporal Laurent. Corporal Laurent was engaged in an authorized act. He was investigating the 911 call. He was making an arrest. And he was, as defendant concedes, he was later justified in entering the premises to investigate the 911 call. Laurent testified it wasn't clear who was involved in the dispute. Hall was refusing to talk to them. There was no indication that this was another dispute between defendant and Hall or if there was someone else in the house that was keeping Hall from going back outside. The officers could reasonably operate under the assumption that the situation in the house had not been resolved. At that point in time, Laurent then decided he needed to detain the defendant and keep him outside of the home. To allow the officers to determine what was actually going on. Corporal Laurent said he was trying to speak to defendant. Defendant said he did not know what was going on. Defendant turned to go inside and Officer Laurent told him not to. This is the point when these encounters happen very quickly. It's hard to pinpoint a time when does this evolve into an arrest. An arrest occurs when a defendant's freedom of movement is restrained by physical force or show of authority. When Officer Laurent told defendant that he should remain outside and defendant chose not to do that, then Officer Laurent was authorized to arrest the defendant. Officer Laurent only used his force in response to the defendant's action. The jury heard all of those facts and rejected defendant's version of the facts that he didn't know he was being arrested and that he was trying to go inside and get his shoes. That again needs to be considered in light of all the preceding facts, all of the other facts involved. This was not a case where the officer just came to the door and the defendant is not aware why the officers are there and the defendant asks to go inside and get dressed. The fact that the defendant kept asking to go inside indicates that he knew he was being detained outside of the door. As to whether defendant knowingly obstructed and resisted Corporal Laurent's performance, we have direct evidence in the record that defendant knew that he was keeping the officers from investigating the reason for the 911 call. At page 275 in the record, defendant testified that Laurent told him that if he did not come out of the house, the officers were going to come in and defendant testified he was trying to prevent an unlawful entry while he was standing at the door. Therefore, he knew the officers wanted to enter. Therefore, defendant knew that he was obstructing the officers' investigation. Defendant testified that Laurent ordered him to come out and talk to us. As the video shows, at approximately 529 to 530 in the morning, defendant tried to go outside, tensed up, and then tried to pull away. Defendant then tried to prevent the officers from entering. He then is heard on the video shouting to tell people to lock the door as he is being handled by the officers. Defendant argues that a reasonable inference could be drawn that he was trying to go inside and get dressed. Well, if that's the case, then why did defendant feel the need to repeatedly ask permission from Officer Laurent to go inside and get his clothes? It's clear that the defendant knew he was under the officers' order to remain outside. Turning to the evidence as to Officer Heath, Opposing Counsel talks about how it's not clear when the officers decided to arrest the defendant. I mean, the officers aren't going to be standing around and talking about and deciding when to arrest someone. These are circumstances that happen quickly. These are things that happen within a matter of seconds. It's not clear from Officer Heath's body camera video what the entire interaction was between defendant and boarders. We do have defendant's testimony and Corporal Laurent's testimony. When Officer Heath was walking back to the door, defendant was trying to get inside the door and Corporal Laurent had already taken hold of defendant. Officer Heath was then standing by and came to the aid of Corporal Laurent. The fact that Officer Heath testified that he told defendant he was under arrest, but he acknowledged on cross-examination it's possible he didn't. Defendant says that he was never told he was under arrest. But as the court has noted, it's not necessary for an officer to make a formal declaration that an arrest is taking place. The test is, in the cases I cited in my brief, Bansleth and McKinney, the test is whether a reasonable person would perceive he was under arrest. This is not generally shown by direct proof. It's by circumstantial evidence. As everyone has acknowledged, defendant was told to place his hands behind his back. Heath testified he had to tell defendant three times to place his hands behind his back. One or two times when they were standing on the stairs and once on the ground. It can be inferred that defendant knew he was being arrested by uniformed officers who had been at the residence for 15 minutes, unsuccessfully trying to determine the basis for a 911 call. Defendant stiffened his arms and put both arms under his body. The video shows this exchange and the amount of time the struggle took. Descendant concedes that this took more than 30 seconds. I think it was between 30 seconds and a minute. If it's taking that long, then I think it's pretty clear that defendant is resisting. The jury watched the video. The struggle is heard on the body camera audio. You can hear grunts and groans by various people, both officers, defendant. This was something that was clearly a struggle taking place. I believe at one point the use of a taser was threatened but not employed. That certainly is an extreme measure that was not used in this case, but it demonstrates the fact that the officers were having trouble getting defendant under control. Heath was not required to abandon his efforts to, or any of the officers, their efforts to arrest defendant in the face of defendant's obvious resistance. Defendant knew that his act of stiffening his arms would impede or hinder the ability of the officers to arrest him. Defendant denied in his testimony that he struggled with the officers. That testimony is simply unworthy of belief because it's clearly refuted by the audio and the video that indicates the struggle was going on. The jury was free to reject that testimony as not credible. As the court is aware, this is a jury trial and a sufficiency of the evidence case, the state asks the court to look at the evidence in the light most favorable to the state and consider all of the surrounding facts and circumstances that occurred before Corporal Loren and defendant were standing in the doorway. The evidence clearly supports defendant's conviction for resisting and obstructing the acts of these officers. Accordingly, the state asks that the defendant's convictions on both counts be affirmed. Could I answer the court's questions? Thank you. Justice Jorgensen? Yes. You know, Officer Heath just prior to engaging the defendant said, I am tired of playing games. Does that change your position at all? I mean, that's hardly any indication of being under arrest, isn't it? That is on the video. That is a statement that Officer Heath made. Is your question whether that indicated to defendant that he knew he was under arrest? Yeah. I mean, how does that communicate that you're under arrest? Or more importantly, does it communicate that you're not under arrest? That perhaps these officers are very angry, but you're not under arrest. Well, yeah. I see what you mean. From what I can recall from the video, Officer Heath was walking toward the door. He saw that there was kind of a struggle or kind of a confrontation beginning between Loren and defendant. And Officer Heath then did state, you know, maybe under his breath, you know, we're tired of playing games. I'm not, it's not clear whether he's stated that, you know, to defendant. You know, there's, that part of the video is hard to see because it is dark, because of the lighting, because of, you know, background noise. But I don't know that defendant heard Heath say that. I think defendant might have been more focused on Corporal Loren who was right in front of him and trying to keep him from going back inside. But it doesn't change my contention that defendant knew he was under arrest first initially from his encounter with Corporal Loren who had told him to remain outside. And when defendant. Well, let's get back to that then. You know, your opposing counsel said, you know, there had been some exchange between the defendant and these officers. Nothing seemed to be amiss. Go ahead. Go back in the house. Go get a shirt. They let him go back in the house. He locks the door behind him and then he cooperates and comes back outside again. So why would he think that? I mean, what has changed in the circumstance that would now allow Officer Loren to even enter the house? Well, I think it should be noted that when Officer Heath first knocked on the door upon arriving at the house, Alyssa Hall came to the door and asked, you know, if she could go get dressed and he let her do that. So I think they were allowing people to, you know, have some measure. That is my point. Doesn't that undermine your inference that you would argue that there was something amiss here? I mean, if the person who makes the 911 call comes to the door and you go, okay, fine, just go ahead and lock the door again. We'll just wait right here. I mean, that conveys an inference, not that there were exigent circumstances, but that there were not. Well, are you talking about Hall? Yes, which is communicated later to her brother. Correct? Lock the door and just come back in the house. Well, I mean, go ahead. I'm sorry. There's one of the drawbacks of being on the phone. Sorry. No, please. Please go ahead, Your Honor. Let you finish the answer to your question. Well, and I know you're focusing more on defendant than I will get to that. But we don't know who called 911 in the second instance. In this current instance, we don't know who called 911. It was a hang up. So we don't know if defendant called. We don't know who called. But the fact that Hall was allowed some time to dress and then the fact that defendant came outside and then he was allowed to go back in and get a shirt on or whatever. I mean, I think that was reasonable. I think the officers were trying to make them comfortable, but there was still something going on inside the house. There were people arguing. There were intermittent facts and circumstances. There were people arguing. Hall then called 911 and asked that the officers leave. And the officers still had no idea who called 911, who was in danger, what the emergency was inside the house. There was never any... But isn't it later on in the transcript, and forgive me if I'm misstating this, but that I think it was Officer Heath asked the defendant, why does your sister keep calling 911? Now, I would infer from that that they know it's her and that they have a history with her calling 911. So the inference would be that they did believe, even when they encountered her in the beginning, that she was the one who made the call. Isn't that a fair inference too? That is a fair inference, yes. Heath did say, your sister needs to stop calling 911. Again, I think that was just a statement of frustration. We're out here trying to figure out what's going on and she won't talk to us and she needs to stop calling 911. And Hall, the sister, was allowed... At some point, she went back inside the house and the officers did not stop her. But the fact remains that the defendant was standing at the door. The defendant testified that he was trying to prevent an unlawful entry. He knew the officers wanted to enter the house. He cannot reasonably argue now that he did not know that he was preventing the officers from their investigation. But doesn't that have to be an authorized act? Well, the officers would be authorized to enter the premises to investigate the call. Under these circumstances, that's your position? Yes, Your Honor. Yes, Your Honor. Given all the circumstances, no one had explained to the officers what is going on. All of the circumstances that happened between the 15 minutes preceding the arrest... When there's a 911 call, the whole reason that the officers show up is because there is apparently an emergency that needs to be taken care of inside the house. And to this point, the officers still do not know what has happened. No one is telling them what the emergency is. All right. Justice Jargonson, do you have any other questions? I do not. Thank you. Justice Shasta? Yes. Does innocent or inadvertent conduct violate 31-1A? Well, talking about resisting arrest, 31-1A... Right. Correct. Resisting or obstructing can take many forms. It can be hindering, it could be... I think if someone happens to be standing in the way of an officer who's trying to go into a house, I think that could be deemed innocent conduct. I just... I think there has to be some knowledge, even circumstantial, that you know you're obstructing or interrupting or impeding an officer, but that is not what happened here. No, I'm not asking you if you thought that's what happened here. I just asked you if that was the law. So the officer must also be engaged in an authorized act within their official capacity, correct? Correct. What was the act here? Again, it was investigating these calls? The authorized act here was investigating the 911 call, and when defendant was attempting to go back inside in contravention to Officer Lawrence's order that he remain outside, Officer Lawrence was justified, you know, the authorized act was initiating an arrest. They didn't... Do you think that they were authorized to enter the home? I mean, were there exigent circumstances to enter this home? Yes, Your Honor. I do. I do. And I think, you know, I think the officers were showing, you know, were trying to deal with it from outside. They gave, you know, they were, they heard arguing. They were, they saw, you know, the sister Hall came back out, came out and said there was no problem and went back in. But the fact that defendant was standing at the door, and then when, and then defendant tells his sister to lock the door behind him as he's being, as he's being arrested, I think the officers certainly had, before arresting the defendant, the officers had a clear ability and clear clearance to go inside and investigate the, the purpose of the 911 call. They had a reasonable belief that emergency that, that required, that action was needed to aid someone inside the home. But Hall was outside. She was the one who called and she was outside. Well, not at the time. She went back inside before, before the, before Corporal Lauren and defendant were standing at the door. Hall at some point, we're not sure when, Hall did return inside. Because when, when defendant... She was outside after her call. After she called 911, she was in fact outside, was she not? Yes, after the, after the officers arrived at the home, you know, after the officers arrived, defendant did, you know, Hall did come back outside the home. And I believe defendant conceded in his argument this morning that the, that the officers were authorized to go in the house. But Officer Hall, I'm sorry, Ms. Hall came outside and then she refused to speak to the officers. So that gives the officers even more reason to, to, to, to suspect that something is going on inside. There, there could be another person who, inside who is, you know, who is telling Hall to call the police off and get, get the police out of there. We don't know, you know, the officers didn't know at that point what is happening. So they weren't unfamiliar with this woman, correct? That seems to be... As a matter of fact, I think they even indicated she had some mental health issues, correct? The officer, Officer Heath made a, made a remark in the, in the video or in the, on the audio that, that they, they were, that seemed that they were aware, aware of, of her. You know, that, that doesn't mean that, that doesn't mean that the, the defendant was not, you know, was justified in, in his actions. You know, you relied on green, people versus green. In that case, there was, it was pretty clear that there was exigent circumstances were necessary. I mean, did Laurent have a belief that exigent circumstances were present in this case for him to enter when Hall was outside after the 911 call and the defendant was pretty much cooperating other than getting his clothes? Well, at that point... What was the, what was the evidence of imminent threat of life or property? Well, the, the, the evidence is that, you know, no, no one has, the, the officers, it was never made clear to the officers by Hall. I think that the fact that Hall was walking around outside on a cell phone, ignoring Officer Heath and saying that the problem had been removed when, when earlier she said someone was climbing out the window and no one came out. There are just, there are just so many facts here that, that, that, that seems like Hall was maybe rethinking, maybe, maybe she was, you know, regretting the fact that she'd called 911 and she wanted, you know, whatever the situation was inside, she wanted it to just kind of resolve on its own. But the fact, but, you know, Hall, Hall then went back inside the house and instead, instead of, instead of remaining outside and telling the officers, you know what, you know, I made a mistake. You know, my brother and I are arguing or whatever this, whatever the circumstance was, she did not explain it to the officers. She simply went back inside and asked the officers to leave and the police dispatcher tells Heath on his, on the, on the body camera audio that Hall, Hall needed to go back outside and, and explain, you know, what the problem is, you know, instead of trying to call, you know, have the officers leave. So, you know, the officers are still waiting outside, trying to find out what the issue is. And that's the point when they are, then they start talking to defending at the front door. Okay, thank you. This is just a scene off. I do not have any questions that have not already been asked. So, Mr. Santella rebuttal. Yes, Your Honor. I would like to start by just clearing up some, some factual questions that arose and opposing counsel's argument. First, the record shows that Ali did not fight multiple officers. This is not like the Thompson case that opposing counsel cited. In the Thompson case, it, it was a fact that the defendant there thrust his elbow into an officer and kept trying to hit him. Here, three officers threw Ali to the ground and got on top of him. And the behavior that Heath discussed on the ground was that Ali would not move his arm over to be put in handcuffs. Whereas Ali said that officer Heath's knee was digging into his arm, which is the reason why he couldn't move it. But regardless, this is not an instance where he was accused of fighting these officers. In fact, if you look at page 167 on the record, the prosecutor said in her opening statement that when Ali was on the ground, he wiggled, not fought, wiggled. That's not the basis of, to form an opinion, an inference that he was fighting. And I also want to point out that the record shows that Alicia was the person that placed the 911 call. That's clear through the fact that she's the one that came to the door. It's clear from the fact that she came outside when the officers had arrived and kept saying that the problem had been removed and the officers understood her to be the person that called 911. I want to talk about how opposing counsel cited page 275 in the record where Ali said at trial that Laurent had told him if he didn't come out, they were just going to come in. The reason why this does not show Ali had knowledge the officers were trying to come in is because it's undermined by the body cam footage. While it's true that not all of the direct conversation between Ali and Laurent was captured after Ali came outside, it's clear that what Laurent said to Ali is, do you want to come out and talk? It's not like I'm going to go inside or anything. And in multiple instances, from what opposing counsel said in her brief and in her argument, the body cam footage contradicts a lot of what the state's case was at trial. So I want to just go through my response to the argument about Laurent. First, I want to reiterate that there is no indication that there was a dispute between Ali and Alicia at this time. In fact, there's no dispute from any of the witnesses or in the state's response brief that Ali was asleep until Alicia woke him up by yelling at his room. No one disputes that. And there's no additional charge that had been added to Ali that he had committed any sort of domestic violence toward Alicia or done anything like that. So it's not clear who Alicia was arguing with. She was seen on the phone multiple times, but it can't be said that it was Ali because Ali was asleep. I also want to talk about the Heath charge in response to what opposing counsel said. The body cam footage, and I encourage your honors to watch that, makes it very clear that Officer Heath did not say, we're done playing games under his breath. And it was not difficult to see his action when he was going towards the door and saying, we're done playing games. He announced that very loudly. That was his response to Ali's question of, can he go inside to get his shoes and his socks? So that shows that Ali really did not know what Heath was doing when Heath grabbed him. And finally, I want to conclude, your honor, there's no evidence showing that Ali knew that he was under arrest when Orant grabbed him and that an officer should not be permitted to act one way or the other. One way during an interaction, and then without telling a person why they changed their mind, impute a natural reaction to resistance. And if you have any further questions, I am ready to answer them. Thank you, Justice Jorgensen. I have no additional questions. Thank you. Justice Shasta? No, thank you. And I don't have any additional questions either. So at this time, we would certainly like to thank counsel for their arguments this morning. The court will take the matter under advisement and render a decision in due course. Court proceedings are concluded for this particular case. We do have another oral argument that we'll be continuing with this morning. So thank you again, counsel. We appreciate your participation in this new and different way to do oral arguments. Take care, everybody. And everyone is now allowed to hang up. Thank you. Thank you, your honor. Thank you.